## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON POWELL,

*Plaintiff,*

v.

COMMUNITY EDUCATION CENTERS,

*Defendant.*

CIVIL ACTION
No. 17-3729

**PAPPERT, J.**                                        **March 8, 2018**

## MEMORANDUM

Devon Powell, a *pro se* inmate at SCI-Huntington, asserts claims pursuant to 42 U.S.C. § 1983 against Community Education Centers for the alleged failure of Officer Raymond[1] to protect Powell from a fellow inmate's attack and for CEC's subsequent failure to provide medical care. CEC moves to dismiss all claims against it. The Court grants the motion but will allow Powell to file an amended complaint.

### I[2]

### A

On October 30, 2015, Powell was transferred from SCI-Camphill to George W. Hill Correctional Facility, also known as Delaware County Prison, for an upcoming court date. (Compl. at 3, ECF No. 4.) The Delaware County Board of Prisons contracted with CEC for GWHCF's administration, making CEC responsible for

---

[1]    Powell refers to the officer as "John Doe" in his complaint but states that he overhead another guard refer to the officer as "Raymond," which Powell believes to be his first name. Powell alleges that the officer declined to provide his name to Powell when asked. Officer Raymond is not named as a defendant.

[2]    The facts are derived from the Amended Complaint and accompanying exhibits, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), and are taken as true and viewed in the light most favorable to Powell, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

GWHCF's management and daily operations. (Compl., Ex. 1.) Powell arrived at GWHCF at 4:30 p.m. and was placed in a holding cell in the intake unit with other "state inmates." (Compl. at 3.)

The next morning, at approximately 9:30 a.m., Officer Raymond said he was going to bring "new guys," or pre-trial detainees, into the cell with Powell and the other state inmates. (*Id*.) Powell claims that he told Raymond he was a "state inmate," to which Raymond said, "So what?" and walked away. (*Id*.) Raymond returned with the pre-trial detainees and placed them in the same holding cell as Powell and the other state inmates. (*Id*.) Shortly after Raymond left, Powell was bullied and assaulted by one of the pre-trial detainees. (*Id*.) Powell was punched and kicked in the head and body. (*Id*.) No one else was involved in the assault. (*Id*.)

Powell sustained a "hickey" on his head and bruises and pain throughout his head, neck and back. (*Id*.) Further, he experiences recurring back pain every several months as a result of the attack. (*Id*. at 6.) Powell states that six months prior to the assault he had a cancerous tumor removed and that at the time of the assault he was taking a blood thinner, putting him at a high risk of internal bleeding. (*Id*.)

Powell asserts that Raymond's conduct was in contravention of GWHCF's policy requiring state inmates and pre-trial detainees be "kept separate." (*Id*. at 3.) Powell states that "had [Raymond] followed the proper protocol and procedures regarding the separation of pre-detainees and state lodgers—for health and safety reasons—the assault would have never happened." (*Id*. at 6.) Powell further asserts that Raymond was a trained C.E.R.T. officer—a member of the Certified Emergency Response Team— in charge of crowd control and monitoring the care and safety of assaulted inmates.

(*Id*.)  Powell states that as a C.E.R.T. officer, Raymond "should have known the need for protective measures for those in his custody."  (*Id*.)

Following the attack, Powell was brought to medical for an evaluation.  The evaluating nurse logged Powell's injuries and had Powell fill out a "sick call slip."  (*Id.* at 3.)  Powell was then taken back to the intake unit and placed in a different cell along with the other state inmates.  (*Id*.)  The next day, Powell completed the sick call slip but was not seen again by medical staff until four days later, after he submitted a second sick call slip.  (*Id*.)

## B

Because Powell filed his complaint *pro se*, the Court "must liberally construe his pleadings."  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "'Courts are to construe complaints so "as to do substantial justice," keeping in mind that *pro se* complaints in particular should be construed liberally.'"  *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)).  Moreover, in a § 1983 action, the Court must "'apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'"  *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (citation omitted)).

Powell seeks to hold CEC accountable for violating his rights under the Eighth Amendment and claims that CEC should be responsible for the inadequate training of

its staff. (Compl. at 5.) Powell's complaint thus asserts municipal liability claims against CEC for Officer Raymond's failure to protect Powell from an inmate attack and for failing to provide necessary medical attention following the attack. Powell does not name Raymond or any other individuals as defendants nor assert that any individual should be held liable, and therefore has not asserted any individual liability claims.

CEC moves to dismiss all claims against it for failure to state a claim under Rule 12(b)(6). (Mot. to Dismiss, ECF No. 9.) CEC contends that Powell cannot allege failure to protect or deliberate indifference to medical needs claims as to CEC, and has failed to allege facts sufficient to show municipal liability under *Monell*. (Mot. at 1.) Powell has not responded, making the motion uncontested. Consistent with the Third Circuit's policy "which favors disposition of litigation on its merits[,]" *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974) (citation omitted), and instruction that a complaint should not be dismissed pursuant to Rule 12(b)(6) "solely on the basis of [a] local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted," *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991), the Court will analyze the merits of CEC's motion.

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that

[a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The

Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

## B

Section 1983 provides a right of action against any person, who under the color of state law, deprives or causes another to be deprived of a Constitutional or federal statutory right. 42 U.S.C. §1983. Municipalities and other local government units, including private corporations providing medical services under contract with a state prison system, are included among those persons to whom § 1983 applies. *See Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

Municipal liability under § 1983 cannot be based on *respondeat superior*; rather, it "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell*, 436 U.S. at 691–95). Therefore, to state a claim for municipal liability, "a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by

the identified policy or custom." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 692–94). Further, proof of municipal liability in connection with the actions of ground-level officers requires proof of a constitutional violation by one or more of those officers. *See, e.g.*, *Grazier v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'" (quotation omitted)).

### III

CEC argues both that Powell fails to sufficiently allege an underlying constitutional violation by a ground-level employee and that, even if he does, he fails to allege facts necessary to support a claim of municipal liability. The Court grants CEC's motion because although Powell sufficiently alleges facts supporting a failure to protect claim, he fails to allege the facts necessary to hold CEC accountable for that violation under *Monell*.

### A

### i

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). However, not every assault perpetrated against an inmate by another inmate rises to the level of a constitutional violation. *Id*. at 834. "To state a claim for damages against a prison official for failure to protect . . . an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that

substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834). "An official acts with deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health or safety." *Parkell v. Markell*, 622 Fed. App'x 136, 139 (3d Cir. 2015) (citing *Farmer*, 511 U.S. at 834).

Powell has alleged sufficient facts to "nudge" his allegation of deliberate indifference to a known, substantial risk of harm "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (2007). Powell alleges that GWHCF has a policy of keeping state inmates separate from pre-trial detainees and that this policy is in place for inmate health and safety. It is reasonable to infer that as a correctional officer at GWHCF trained in C.E.R.T. tactics, Raymond knew of this policy and the reasons behind it. *See Farmer*, 511 U.S. at 842–43 (If a "plaintiff presents evidence showing that a substantial risk of inmate attacks was . . . expressly noted by prison officials in the past, and . . . that the [officer] . . . had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that [he] had actual knowledge of it."). Further, Powell claims he told Raymond that he was a state inmate after Raymond said he was going to bring in pre-trial detainees. Taking that fact as true, it is reasonable to infer that Raymond knew he would be violating GWHCF's policy of keeping state and pre-trial inmates separate by bringing in the pre-trial detainees, thus exposing the inmates to risk. His dismissive response and decision to house the inmates together, if true, could support a finding that Raymond disregarded a known risk.

Powell further alleges that his constitutional rights were violated when he was not provided with adequate medical care. Because inmates "must rely on prison authorities to treat [their] medical needs," the government has an "obligation to provide medical care for those whom it [] incarcerat[es]." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Thus, if an official is deliberately indifferent to an inmate's serious medical needs, he or she violates the Eighth Amendment. *Id*. at 104; *see also Palakovic*, 854 F.3d at 227. A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005). A mistake in medical judgment or mere negligence is insufficient to state a §1983 claim. *See Estelle*, 429 U.S. at 107. The plaintiff must allege facts showing that "a prison official 'knows of a prisoner's need for medical treatment but intentionally refuses to provide it' or 'prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Markell*, 622 Fed. App'x 136, 140–41 (3d Cir. 2015) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)).

Facts showing that "[n]eedless suffering result[ed] from a denial of simple medical care, which does not serve any penological purpose," are sufficient to meet the serious medical need prong. *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). Likewise, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).

Powell alleges that following the attack, he was taken to the medical department where he was seen by an evaluating nurse who recorded his injuries. Powell does not contend that there was any sort of delay before he was taken to the medical department, nor does he allege that the evaluating nurse denied him needed or requested medical treatment. Powell's claim appears to be based on the fact that a subsequent evaluation pursuant to a "sick call slip" was not completed until four days later. The mere allegation of delay is insufficient for purposes of asserting failure to provide adequate medical care. Powell fails to allege that this delay resulted in any needless suffering or contributed to his alleged recurring back pain. Further, although Powell raises the issue of his increased susceptibility to internal bleeding, he does not allege facts from which the Court can infer, assuming this condition constituted a serious medical need, that the evaluating nurse knew of this condition and disregarded his need for more immediate or specialized care. Thus, Powell has not alleged facts supporting a constitutional violation for denial of adequate medical care.

## B

Although Powell has sufficiently alleged a constitutional violation for failure to protect, to proceed on this claim against CEC, he must allege facts supporting municipal liability under *Monell*. A municipality will only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658). "'Failure to' claims—failure to train, failure to discipline, or [] failure to supervise—are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d

307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042

(2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572,

586 (3d Cir. 2004)).  "[L]iability for failure to train subordinate officers will lie only

where a constitutional violation results from 'deliberate indifference to the

constitutional rights of [the municipality's] inhabitants.'"  *Groman v. Twp. of

Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (modifications in original) (quoting *City of

Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).

Powell has failed to allege any facts supporting a claim of deliberate indifference

against CEC.  "A pattern of similar constitutional violations by untrained employees is

'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to

train."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted).  In certain

rare cases, deliberate indifference can be shown if "in light of the duties assigned to

specific officers or employees the need for more or different training is so obvious, and

the inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the city can reasonably be said to have been deliberately indifferent to

the need."  *City of Canton*, 489 U.S. at 390.  Powell has not alleged a history of similar

violations nor is this a rare case in which the need for more or different training is so

obvious.

IV

Powell's Complaint is dismissed because he has failed to state a municipal

liability claim against CEC.  "[I]n civil rights cases district courts must offer

amendment—irrespective of whether it is requested—when dismissing a case for

failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee*

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Powell may file an Amended Complaint consistent with this Memorandum, by **April 9, 2018**.

An appropriate order follows.

BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.